**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **JONATHAN RAY F.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 25-1140-JWL** |
| **FRANK BISIGNANO,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security

denying Social Security Disability Insurance (SSDI) benefits and Supplemental Security

Income (SSI) benefits pursuant to sections 216(i), 223, and 1614(a)(3)(A) of the Social

Security Act, 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(A) (hereinafter the Act).  Finding

no error in the Administrative Law Judge's (ALJ's) evaluation of Plaintiff's allegations

of symptoms resulting from COVID and fibromyalgia and his evaluation of Dr. Neely's

medical opinion, the court ORDERS that judgment shall be entered pursuant to the fourth

sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.    Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of disability claimants, it has determined to caption Social Security decisions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed applications for SSDI and SSI benefits on June 6, 2022. (R. 17, 230-34). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ failed properly to evaluate his subjective allegations regarding disabling fatigue as required by Social Security Ruling (SSR) 16-3p and failed properly to credit a medical opinion from Dr. Neely and two third party witness statements which are consistent with Plaintiff's allegations.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

2

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

3

assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the errors alleged in Plaintiff's Social Security Brief.

## II.    Discussion

Plaintiff reports debilitating fatigue resulting from his long COVID and fibromyalgia.  He argues that at the hearing before the ALJ he "explained that on 'bad days' his fatigue was so profound that he was unable to get out of bed to even drink water or eat food.  Even on good days, he explained he was only able to be active for up to 10 to 15 minutes before needing to rest."  (Pl. Br. 8) (citing R. at 56-57).  He acknowledges the ALJ found his post-covid fatigue and fibromyalgia are severe within the meaning of the regulations but argues she ultimately rejected his allegation of disabling fatigue as inconsistent with the record evidence.  Id.

Plaintiff argues "that the ALJ did not identify any evidence that was inconsistent with [his] reports of fatigue due to post-COVID fatigue and fibromyalgia." (Pl. Br. 8). He argues the ALJ rejected his reports of fatigue because they were simply his subjective reports and "were 'not based on any objective test or examination finding.'" Id. 9. He points out an ALJ may not reject a claimant's allegations of symptoms "solely because the available objective medical evidence does not substantiate [his] statements." Id. (quoting 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)) (brackets in Plaintiff's brief). He argues, "the claimant's reported symptoms should only be rejected when they are inconsistent with the medical evidence within the record." Id. (citing SSR 16-3p, 2016 WL 1119029, at *8).

Plaintiff cites Attia D. S. v. O'Malley, No. CV 23-1262-JWL, 2024 WL 4381228, at *5 (D. Kan. Oct. 2, 2024), for the proposition that "[a]n ALJ's failure to adequately evaluate [sic] a claimant's symptoms as required by [SSR 16-3p] is grounds for remand" (Pl. Br. 8), and argues, quoting Attia D. S., that "[s]ymptoms such as fatigue and pain, particularly, are subjective and cannot be measured by objective tests." Id. 9. Plaintiff thereby seems to imply Attia supports his argument.

The Commissioner responds, arguing that evaluation of a claimant's allegations of symptoms is the province of the finder of fact and his findings in that regard are entitled to great deference from the court. (Comm'r Br. 7). He argues the ALJ here considered the record as a whole and provided valid reasons to discount Plaintiff's allegations of disabling symptoms. Id. 8. He argues the decision below reveals the ALJ considered and discussed Plaintiff's allegations extensively, id., and discounted his allegations because

they were inconsistent with the medical evidence and other record evidence.  (Comm'r

Br. 9).  He cites examples of objective medical evidence, physical examination findings,

and activities of daily living the ALJ considered and found to be inconsistent with

Plaintiff's allegations of disabling symptoms and he argues

> the ALJ did not find that Plaintiff's symptoms were not as severe as alleged
> based solely on the lack of objective medical evidence to substantiate his
> claims.  Rather, the ALJ articulated multiple legally sound reasons for
> finding that Plaintiff's symptoms were not as disabling as he alleged and
> linked those reasons to substantial evidence in the record in compliance
> with 20 C.F.R. § 404.1529 and SSR 16-3p (Tr. 23-30).  While the record is
> not unequivocal, the ALJ's findings are supported by "such relevant
> evidence as a reasonable mind might accept as adequate to support a
> conclusion," which is all that is required.

Id. 11-12 (quoting Perales, 402 U.S. at 401.

### A.    Standard for Evaluating Plaintiff's Allegations of Symptoms

The court's review of an ALJ's evaluation of a claimant's allegations of symptoms

is deferential.  Such determinations are generally treated as binding on review.  Talley v.

Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413

(10th Cir. 1983).  "Credibility determinations[2] are peculiarly the province of the finder of

---

[2] Talley, Broadbent, Wilson, Hackett, Luna, Thompson, and Kepler, were decided when
the term used to describe the evaluation of a claimant's allegations of symptoms resulting
from her impairments was "credibility determination."  Although that term is no longer
used by the Social Security Administration, the applicable regulation never used that term
and the procedure for evaluating a claimant's allegations of symptoms has not
significantly changed.  Revisions to Rules Regarding the Evaluation of Medical
Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R.
§ 404.1529).  Moreover, the Tenth Circuit held its approach to credibility determination
was consistent with the approach set forth in SSR 16-3p.  Brownrigg v. Berryhill, 688 F.
App'x. 542, 546 (10th Cir. 2017).  Therefore, the three-step framework set out in Luna,
based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained
in the regulations in effect on June 10, 2024, when this case was decided.  Nonetheless, to

fact" and will not be overturned when supported by substantial evidence.  Wilson, 602

F.3d at 1144; accord Hackett, 395 F.3d at 1173.

The framework for a proper analysis of a claimant's allegation of symptoms is set

out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  An ALJ must consider (1) whether

the claimant has established a symptom-producing impairment by objective medical

evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and

the claimant's subjective allegations of symptoms; and (3) if so, whether, considering all

the evidence, both objective and subjective, the claimant's symptoms are in fact

disabling.  See, Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (explaining

the Luna framework).  The Commissioner has promulgated regulations suggesting

relevant factors to be considered in evaluating credibility:  Daily activities; location,

duration, frequency, and intensity of symptoms; factors precipitating and aggravating

symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve

symptoms; treatment for symptoms; measures Plaintiff has taken to relieve symptoms;

and other factors concerning limitations or restrictions resulting from symptoms.  20

C.F.R. § 404.1529(c)(3)(i-vii).  The court has recognized a non-exhaustive list of factors

which overlap and expand upon the factors promulgated by the Commissioner.  Luna,

834 F.2d at 165-66.  These factors include:

---

the extent, and only to the extent, that "subjective measures of credibility that are
peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an
examination of a claimant's character, it is specifically prohibited by SSR 16-3p and is no
longer a valid factor to be considered.

the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).

### B.      The ALJ's Relevant Findings

The ALJ found Plaintiff has severe impairments of "post-covid fatigue, fibromyalgia, degenerative disc disease of the cervical spine, major depressive disorder, post-traumatic stress disorder, and generalized anxiety disorder" (R. 20) (finding no. 5) (bold omitted) and medically determinable impairments (MDI) of obstructive sleep apnea, obesity, and postural orthostatic tachycardia syndrome (POTS) which are not severe separately, and she stated that she "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." Id.

The ALJ stated she had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." Id. 23.  She found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id.

8

The ALJ stated various inconsistencies in the record evidence upon which she based her decision to discount Plaintiff's allegations of symptoms. She found Plaintiff's first release from work in January 2022 was not based on any test or clinical examination findings but "appears to have been given in consideration of the claimant's subjective reports." (R. 24) (citing Ex. 3F at 27, R. 419). She noted that Nurse Practitioner Dickerson reported on a consultative examination that Plaintiff "appeared to not fully try during the exam." Id. (citing Ex. 4F at 6, R. 449). The ALJ noted that despite Plaintiff's reports of shortness of breath, in April 2022 spirometry was within normal limits, and "[d]iffusion capacity was within normal limits despite poor test performance indicated by volume extrapolation/FVC." (R. 25) (citing Ex. 7F at 18, R. 504).

Finally, the ALJ relied upon Dr. Trowbridge, the medical consultant's, finding and discussion of

> marked conflict between the objective findings of the consultative examiner and the functional capacity examination (FCE), both of which were performed in December 2022. Notably, many of the observed limitations on the FCE appear to be based on the claimant's subjective reports of fatigue, pain, and numbness. Moreover, the FCE exam findings appear to be self-limited based on complaints of pain and numbness, rather than objective notations of loss of strength or range of motion.

Id. 27; (see also, Ex. 7A, p.9, R. 92)

### C.    Analysis of the ALJ's Evaluation of Plaintiff's Alleged Symptoms

Although the court acknowledges this is a close question and might have been decided differently, it finds that the ALJ has applied the correct legal standard in evaluating Plaintiff's allegations of disabling symptoms and that substantial record evidence (such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion) supports the Commissioner's decision and it notes it may not substitute its judgment for that of the Commissioner. While Plaintiff seems to suggest that this court's decision in Attia D. S. supports his argument in this case, the court disagrees. Nonetheless, the court finds that decision controls its decision here. In Attia, the court explained

> While the court recognizes SSR 16-3p requires that a Social Security "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms," 2016 WL 1119029, at *9, it does not agree with the line of cases from this district … tending to suggest that the decision must provide a specific reason to discount each symptom alleged by the claimant. Were that the case, there would be no reason for the ALJ or the court to consider "the record as a whole." Symptoms such as fatigue and pain, particularly, are subjective and cannot be measured by objective tests. Therefore, inconsistencies between the record evidence and other allegations of symptoms may be sufficient to discount all plaintiff's allegations of symptoms.

Attia D. S., 2024 WL 4381228, *5.

In that case, the court found the problem was the ALJ's decision did "not point to specific record evidence demonstrating [any] inconsistency with Plaintiff's alleged symptoms" from any impairment. Id. *6. The court explained,

> Moreover, the mere repetition of the finding that the record does not show significant limitations from two types of cancer (in remission) Cowden's Disease (tending to increase the risk of developing cancer), and obesity (with a BMI in excess of 50) all of which tend to increase the effects of fatigue, does not demonstrate that Plaintiff's fatigue is not disabling, because fatigue, like pain, cannot be measured by some objective medical test. Finally, the ALJ has not pointed to significant inconsistencies in the record with regard to Plaintiff's allegation of other symptoms—inability to stand and walk for long periods, issues with concentration, lifting limitations, and anxiety around people.

10

Id.  In other words, the court in Attia D. S. found that when a claimant alleges limiting symptoms resulting from her impairments it is insufficient for the Commissioner merely to find that the record evidence does not show such limitation, but he must examine all the record evidence for inconsistences between the record evidence and all the claimant's alleged limitations.  Further, the court found that the Commissioner need not cite inconsistencies between the record evidence and the claimant's allegations of symptoms from each impairment but rather that inconsistencies with regard to any impairment may be sufficient to discount all the claimant's allegations of disabling symptoms.  Thus, when a claimant alleges disabling symptoms resulting from an impairment or impairments, the Commissioner must apply the procedure from SSR 16-3p and evaluate all those allegations against all the record evidence to determine how to credit or discount them.

The inconsistencies relied upon by the ALJ to discount Plaintiff's allegations of disabling symptoms are supported by the record evidence.  His finding Plaintiff's first release from work for fatigue "appears to have been given in consideration of [his] subjective reports" (R. 24) is supported by the record evidence, as Dr. Lee stated, "Patient does not feel as though he can return to work at this point yet.  Will continue to have him off for the moment, reevaluate in 6 weeks."  Id. 419.  The record also confirms Nurse Practitioner Dickerson reported Plaintiff's maneuvers "just acted like he was not fully trying during the exam."  Id. 449.  The record indicates Plaintiff had poor test performance on his testing for shortness of breath: "Poor test performance is indicated by volume extrapolation/FVC."  Id. 504.  Moreover, as quoted above, Dr. Trowbridge

11

reported "a marked conflict between the CE [consultative examination] and FCEs [functional capacity evaluation] in file, both performed in 12/2022," that the limitations in the FCE appear subjective based on Plaintiff's reports of "fatigue, pain and numbness and demonstrating pain behaviors," that the exam findings "appear to be self-limited based on c/o [complaints of] pain and numbness," and that the FCE findings "conflict with other normal findings in file, both prior to and after this FCE exam."  (R. 92).

As demonstrated herein, the ALJ applied the correct legal standard, she provided reasons for discounting Plaintiff's allegations of disabling symptoms and those reasons are supported by substantial record evidence.  More is not required.  Plaintiff has shown no error in the ALJ's evaluation of his allegations of disabling symptoms.

### D.    Evaluation of Dr. Neely's Medical Opinion and Third Party Opinions

Plaintiff also claims it was error to discount Dr. Neely's medical opinion and the opinion statements of certain individuals familiar with his condition who "had observed [his] extreme, debilitating fatigue and pain." (Pl. Br. 11).  He argues, "the ALJ's analysis of Dr. Neely's opinion was tainted by the same errors identified above." Id.  He argues, the ALJ "failed to identify any evidence that was truly inconsistent with [his] reports of fatigue. [And] rejected [his] reported fatigue symptoms because they were mere symptoms while pointing to a lack of corroborating objective tests." Id. (citing R. 26). He argues the ALJ also "overly emphasized the supposedly lacking objective evidence regarding [Plaintiff's] reports of fatigue" when considering the third-party statements. Id. Again, Plaintiff cites Attia D. S. in support of his argument these opinions should not have been discounted. Id. 12-13.

The Commissioner responds that the ALJ applied the correct legal standard to evaluate Dr. Neely's opinions, substantial evidence in the record supports her rationale for discounting the opinions, and therefore there is no error in her discounting the opinions.  (Comm'r Br. 13-14).

### E.        Standard for Evaluating Opinion Evidence

The regulations explain "How we consider and articulate medical opinions and prior administrative medical findings[3] for claims filed on or after March 27, 2017."  20 C.F.R. § 404.1520c.  That regulation provides that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 404.1520c(a).  The regulation provides that the SSA will consider each medical source's opinions using five factors; supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding.  20 C.F.R. § 404.1520c(a)(c)(1-5).  It provides that the most important factors in evaluating persuasiveness are supportability and consistency.  Id.

The regulation explains that the decision will articulate how persuasive the SSA finds all medical opinions and prior administrative medical findings.  20 C.F.R.

---

[3] "Prior administrative medical findings" is a term of art referring to the findings of state or federal agency physicians or psychologists about a medical issue at an earlier level of review.  20 C.F.R. § 404.1513(a)(5).  Although the term is broader in scope than a "medical opinion," id. at § 404.1513(a)(2), the terms are often used interchangeably and the court will follow that practice in this case except when necessary to draw a distinction.

§ 404.1520c(b).  The articulation requirement applies for each source, but not for each opinion of that source separately.  20 C.F.R. § 404.1520c(b)(1).  It requires that the SSA

> "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.  We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record."

20 C.F.R. § 404.1520c(b)(2).  The regulation explains that when the decision-maker finds two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," the decision will articulate the other most persuasive factors from paragraphs (c)(3) through (c)(5).  20 C.F.R. § 404.1520c(b)(3).  Finally, the regulation explains that the SSA is not required to articulate how it considered evidence from non-medical sources.  20 C.F.R. § 404.1520c(d).

### F.    The ALJ's Relevant Findings

The ALJ found the opinions expressed in the report of the FCE prepared by Ms. Barfield not persuasive because "the finding that the claimant is unable to return to work is a determination reserved to the Commissioner; it appeared "to rely on the claimant's subjective reports of his ability to perform functional tasks, rather than his objective performance during the exam;" and because Ms. Barfield's findings "are not consistent with the objective testing throughout the record."  (R. 25).

She found Dr. Neely's opinion not persuasive because "the hours of activity provided by Dr. Neely are less than eight-hours, or the normal workday;" because the

14

opinion "is not supported by explanation and appears to rely primarily on the claimant's subjective reports of symptoms;" and "it is not consistent with the evidence, which, as set forth above, regularly showed normal physical and test results." (R. 26).

The ALJ found Dr. Trowbridge's opinion persuasive because it is "consistent with the claimant's established impairments of mild cervical degenerative disc disease, clinical fibromyalgia, and long COVID syndrome" and its "findings are supported by the isolated clinical findings of dyspnea on examination, shortness of air and dizziness on Bruce testing after six minutes." Id. 26-27. She found that Dr. Trowbridge noted

> the marked conflict between the objective findings of the consultative examiner and the functional capacity examination (FCE), both of which were performed in December 2022. Notably, many of the observed limitations on the FCE appear to be based on the claimant's subjective reports of fatigue, pain, and numbness. Moreover, the FCE exam findings appear to be self-limited based on complaints of pain and numbness, rather than objective notations of loss of strength or range of motion. The assessment of the FCE, discussed above, conflict with the consistently normal testing and examination findings noted in the medical evidence, both prior to and after the FCE.

Id. 27.

The ALJ found the opinion of the state agency psychologists, Dr. Thayer and Dr. Turner "generally persuasive" but she found "additional mental functional limitations are reasonable, as set forth above, to accommodate the claimant's subjective reports of fatigue." Id. 29.

**G.    Analysis**

Although Plaintiff argues the ALJ's consideration of Dr. Neely's opinion was tainted by the errors she committed in evaluating his allegations of symptoms and that the

ALJ "failed to identify any evidence that was truly inconsistent with [his] reports of fatigue" (Pl. Br. 11), Plaintiff misunderstands the standard applicable to evaluating a claimant's allegation of symptoms. As explained in section II. C. above, the Commissioner need not provide specific reasons to discount each symptom alleged by a claimant but where the ALJ provides her rationale for discounting the claimant's allegations of symptoms supported by inconsistencies between those allegations and the record evidence, it will be sufficient to discount even those alleged symptoms which are subjective and without objective support, such as pain or fatigue. See also, Attia D. S., 2024 WL 4381228, *5. Thus, as the court found above, there was no error in evaluating Plaintiff's allegations of disabling fatigue which might have tainted, but actually supports the ALJ's consideration of Dr. Neely's opinion.

The question for the court is whether the ALJ applied the correct legal standard in evaluating Dr. Neely's opinion and whether the record evidence supports her evaluation. Plaintiff does not allege error in the ALJ's application of the standard for evaluating medical opinions, and the court finds none. As noted above, the ALJ provided her reasons to find Dr. Neely's opinion not persuasive: The hours of activity Dr. Neely provided are, in fact, less than the normal workday; Dr. Neely did not support his opinion with explanation; the opinion appears to rely primarily on the Plaintiff's subjective complaints; and the opinion is not consistent with the normal physical exam and test results regularly appearing in the record. (R. 26) (citing Ex. 22F, R. 1141-43).

The record supports each finding upon which the ALJ relied to discount Dr. Neely's opinion. Dr. Neely found Plaintiff can sit 30 minutes at a time for at least 6

16

hours total in a workday and can stand 30 minutes at a time for less than 2 hours total in a workday. (R. 1142). While this might be viewed as equaling an 8-hour workday, the ALJ is correct that it does not. All this tells the reader affirmatively is that Plaintiff can sit for six hours in a workday and cannot stand for two hours in a workday. It does not explain how the difference will be made up. While one might assume that the "at least" in sitting six hours will accommodate the "less than" in standing two hours, it does not because one is not told how much more than six hours Plaintiff can sit, nor how much less than two hours Plaintiff can stand. To find them equal to an 8-hour workday one must speculate in both directions. Alternatively, one might argue that the normal breaks at the end of every two hours would suffice to make up the unknown difference, but the form on which Dr. Neely provided his opinion explains that the total time for sitting or standing in a day is "with normal breaks." Id.

The ALJ is correct that Dr. Neely did not provide any explanation for his opinions, he merely checked the boxes or filled in the blanks to provide his opinion without explanation. Id. 1141-43. Because Dr. Neely did not provide an explanation for his opinion, the ALJ is correct that it appears his opinion merely relied upon Plaintiff's subjective reports of symptoms. The first page of Dr. Neely's Medical Source Statement wherein he provided most of the written portion of his opinion primarily lists Plaintiff's allegations of symptoms. Id. 1141. Even when asked for the clinical findings and objective signs of Plaintiff's impairments, Dr. Neely provided symptoms: lightheadedness, fatiguability, and pain. Id. Finally, the ALJ is correct that Dr. Neely's

17

opinion is inconsistent with much of the record evidence demonstrating normal physical exams and test results. The ALJ did not err in evaluating Dr. Neely's opinion.

As noted in section II, E, above the regulation controlling evaluation of opinion evidence explains that the SSA is not required to articulate how it considered evidence from non-medical sources. 20 C.F.R. § 404.1520c(d). Nevertheless, the ALJ explained she had considered the statements of Plaintiff's friends and found them not particularly persuasive. In accordance with the factors included in <u>Kepler</u>, 68 F.3d, 391, and <u>Thompson</u>, 987 F.2d at 1489 (the consistency or compatibility of nonmedical testimony with objective medical evidence), the ALJ explained Plaintiff's friends' statements "do not outweigh the accumulated medical evidence." (R. 29). More is not required.

Plaintiff has shown no error in the Commissioner's final decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated June 10, 2026, at Kansas City, Kansas.

<u>s/ John W. Lungstrum</u>
**John W. Lungstrum**
**United States District Judge**

18